## Eleanor Hutchinson v. Francis Croarkin.

1.  FRAUDULENT CONVEYANCES.—*To What Respect Binding.*—A voluntary conveyance, fraudulent as against creditors, may nevertheless be valid and binding, except as to those who were creditors at the time such conveyance was made.

2.  HUSBAND AND WIFE—*Where Not Partners.*—The fact that a husband worked for and assisted his wife in the management of a boarding house and hotel does not of itself constitute him a partner, or establish the contention that he was financially interested in the business with her.

3.  EQUITY PRACTICE—*Measure of Proof.*—Material averments in a

bill calling for an answer under oath, which are denied by a verified answer, must be proven by the testimony of two witnesses, or that of one witness and corroborating evidence equal to that of another.

**Creditor's Bill.**—Appeal from the Circuit Court of Cook County; the Hon. RICHARD W. CLIFFORD, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1899. Reversed and remanded with directions. Opinion filed February 13, 1900. Rehearing denied.

**Statement.**—This is a creditor's bill wherein appellee is complainant and appellant and others were defendants. Appellee recovered a judgment against Joshua H. Hutchinson, husband of appellant, January 10, 1896. The property which it is sought to subject to the payment of said judgment is capital stock in the Oakland Hotel Company. Said Hotel Company was organized and stock issued in June, 1894. The capital stock of said Hotel Company is $15,000, divided into 600 shares, of the par value of $25 each. Appellant subscribed for and received 595 shares of that stock. The decree finds that said Joshua H. Hutchinson is owner of 297 shares of the stock received by appellant, and directs that appellant indorse, deliver and assign to one of the masters in chancery of said court, 297 shares of said stock; that said master sell the same, and that out of the proceeds of such sale the amount due upon said judgment be paid.

In 1883 appellant engaged in the boarding house business on Wabash avenue, Chicago, and at that time invested $1,800 in that business.. In January, 1885, she was married to said Joshua H. Hutchinson. At that time he was employed at a salary of $20 per week. He continued in such employment about five years after such marriage. In 1886 said Joshua A. Hutchinson sold real estate which belonged to him, for the sum of $2,200.

At the time of said marriage, in 1885, Mr. Hutchinson had three children. He went at once to live with appellant in said boarding house, taking his children with him. From the time it was commenced by appellant, in 1883, up to 1894, said boarding house business was prosperous, and came to be known as Gresham Hotel.

After terminating his aforesaid employment in 1889, Mr.

Hutchinson was engaged in real estate business about a year, but made nothing at that. Then he engaged in an enterprise in which he invested $1,000 in cash, and lost it. In the spring of 1892 he made another business venture, in which he lost $1,000 more.

In 1894 said boarding house business was transferred to Oakland boulevard, and said corporation organized. Said Oakland Hotel Company has since that time continued said business. Mr. Hutchinson has been employed by that company and paid by it a fixed salary ever since it was organized.

Mr. Hutchinson and his said three children have lived at said boarding house with appellant (and one child born since said marriage) all the time since he was married to appellant, except when one of his children was away attending school. He never paid any board or room rent for himself or family at either of said boarding houses. One of Mr. Hutchinson's daughters received a special education in Chicago, in music. His second daughter received a general education at a college in Ireland. Mr. Hutchinson paid the expenses for both of them.

The testimony does not show that Mr. Hutchinson has had any income or received any money from any source since the termination of his employment in 1889. He has put no money into said boarding house business since that time, if ever. But he has since that time lost $2,000 in business ventures and has supported and educated his children. Since some time in 1892 he has been engaged in no business other than in connection with the Gresham and Oakland hotels.

ELMER DEWITT BROTHERS, attorney for appellant; HENRY C. NOYES, of counsel.

WILLIAM A. DOYLE, attorney for appellee; FRANCIS E. CROARKIN, of counsel.

MR. PRESIDING JUSTICE HORTON delivered the opinion of the court.

A voluntary conveyance alleged to be fraudulent as

against creditors is valid and binding except as to one who was a creditor at the time such voluntary conveyance was made. Mixel v. Lutz, 34 Ill. 382; Tunison v. Chamblin, 88 Ill. 378. The judgment in question was not recovered until two years after the alleged fraudulent transfer of stock to appellant. But the claim of appellee had existed since 1891. It was for damages growing out of a personal wrong or tort. A person having such a claim is a creditor of the *tort feasor* within the meaning of the statute of frauds. Bougard v. Block, 81 Ill. 186; Anglo-American Co. v. Baier, 31 Ill. App. 653, 657. The rules of law applicable to this case are well settled. The important question to be determined is whether issuing the capital stock in question to appellant was fraudulent as against the rights of appellee.

There was never any agreement by which Mr. Hutchinson was to have any interest, as partner or otherwise, in said boarding house business. But it is contended by counsel for appellee that facts and circumstances appearing in the testimony show that he had such interest.

Appellant was called by appellee and examined as a witness. It appears that she answered all questions propounded to her fully and fairly and without evasion. There is no attempt to impeach or discredit her. Neither is there any testimony seriously conflicting with her statements as to any material fact. She testified that in 1892, after he had failed in his other business ventures, Mr. Hutchinson first undertook the management of the Gresham Hotel and assisted her—that up to that time she had herself managed the business—and that the business did not increase under his management. The testimony does not sustain the contention that Mr. Hutchinson ever put any definite amount into the business, or that he ever in fact contributed anything thereto, other than personal services, and that he had the support of himself and his three children. It does not appear that any accounts were kept as between Mr. Hutchinson and appellant. He and his children lived in the boarding house with her, and up to 1889 he probably contributed more or less toward the family expenses, but nothing since,

Hutchinson v. Croarkin.

other than his services.    True, he joined with her in a lease or in leases of property used as a boarding house or hotel, and for a time the proceeds of the business were deposited in bank in his name and checked out in paying bills in connection with the business.    We do not find that any of his separate money went into the business through the bank deposits.

The fact is he never had any money of his own to put into the business after some time during the year 1889. When he worked, his salary was $20 per week, with which to support his family.    He lost in business ventures as much as he received for real estate sold.    It does not appear that the business was ever conducted in his name, or in the name of any partnership of which he appeared to be a member. Appellant swears that " Mr. Hutchinson never had any interest in " the Gresham Hotel.

As stated, Mr. Hutchinson has never contributed any money or property to said business since appellee became a creditor.    Appellee never extended any credit to Mr. Hutchinson upon the faith of his alleged interest in said business. Appellant established and owned the business.    The fact that Mr. Hutchinson worked for and assisted appellant in the management of said business does not of itself constitute him a partner or establish the contention that he was financially interested in said business.

The prayer of said bill is that appellant and the other defendants therein named " may be required upon their several and respective corporal oath  * * *  to full, true, direct and perfect answers make to all and singular the matters and things herein (therein) before stated and charged, and especially " as to many matters then in said bill of complaint and at length stated and set forth.    And further " that the defendants may also several answer make to " the interrogations thereinafter " numbered and set forth."    Then follows prayer for process commanding the defendants to appear, etc., " then and there to answer this bill, etc., but not under oath (answer under oath being hereby waived)."

The defendants answered under oath. That seems to bring this case within the rule that material averments in the bill which are denied by the answer must be proven by the testimony of two witnesses or that of one witness and corroborating evidence equal to that of another.

But upon the merits of the case and aside from the question as to the effect of the answers under oath the bill should be dismissed for want of equity.

The decree of the Circuit Court is reversed and remanded with directions to dismiss said bill for want of equity. Reversed and remanded with directions.